[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By way of procedural background, this marital dissolution action was commenced by the plaintiff by complaint dated April 21, 1995. The defendant, who is pro se, filed an appearance dated October 20, 1995. The file reflects that the matter proceeded on an uncontested basis to judgment on April 7, 1997. In its judgment, the court, Barall, J., awarded alimony to neither party and ordered the plaintiff's interest in jointly-held real property located at 4 Grant Road, Enfield, Connecticut statutorily conveyed to the defendant in accordance with the provisions of Connecticut General Statute 46b-81. Thereafter, by pleading dated August 5, 1997, the defendant moved to reopen the Judgment on the basis of her claim that she had been ejected from her home, had lost the marital dissolution papers, and had mistakenly believed that the date of the marital dissolution hearing had been set for April 15, 1997. She also alleged that there were numerous errors in the judgment. The defendant's Motion to Reopen was granted by the court, Dranginis, J., on October 22, 1997. Thereafter, on November 6, 1997, the defendant filed a pleading captioned "Defendant's Amended Counter Complaint and Claim for Relief." In this document, the defendant makes several allegations, including the assertion that this is the parties' second marriage, and that she agreed to a remarriage CT Page 2320 only upon the plaintiff's promise that he would not file for divorce again. She claims that the plaintiff breached this promise by filing for divorce. She also alleges that the plaintiff abandoned her, removed funds from a jointly-held savings account, and removed her from medical insurance coverage. She claims that the plaintiff's conduct has caused her emotional, mental and physical pain, mental anguish, anxiety and distress, physical and emotional trauma, and discomfort. By way of relief, the defendant seeks alimony, support for the period of "abandonment", reimbursement for debts she accrued after the plaintiff's "abandonment", reimbursement for lost wages resulting from court appearances relating to this matter, future payment of medical and dental needs as they occur, court costs, and an order of separation. The plaintiff seeks a dissolution of the marriage and counsel fees.
The marital dissolution hearing took place on November 3, 1997 and January 10, 1998. Based on the evidence adduced at the hearing, the court makes the following findings and orders.
The parties herein were married on June 30, 1989 in East Hartford, Connecticut. The court has jurisdiction over the marriage, and the parties. This was the parties' second marriage. They were first married in 1975 and lived together for approximately one year before they separated. While the precise date of their first marital dissolution is not known, it appears that the marriage was dissolved in either 1978 or 1979. The parties have no children issue of this marriage. They have been separated since July 1991, when the plaintiff moved from the (former) family residence at 4 Grant Street, Enfield, Connecticut. This property was purchased by the parties for one hundred twenty-one thousand ($121,000) dollars on October 20, 1989. At the time of purchase, the parties undertook a mortgage obligation of one hundred seven thousand ($107,000) dollars. Funds for the down payment came from the plaintiff's father as a gift, and from the parties' respective savings. Title to this property vested in the Household Bank on October 16, 1996, pursuant to a judgment of Strict Foreclosure dated July 22, 1996. Thereafter, the defendant was removed from the property pursuant to an Execution for Ejectment issued by the court on February 26, 1997.
The plaintiff lives in East Hartford. The defendant lives in an apartment in Enfield. CT Page 2321
The plaintiff, who is sixty two years old, is employed as a machine operator at Quality Name Plate Inc., where he earns a weekly gross salary of approximately five hundred ninety ($590) dollars, netting approximately four hundred eight ($408) dollars a week. In addition, he participates in a 401(k) program in which he is fully vested. On December 31, 1989, approximately six months after the parties' marriage, the balance of the plaintiff's 401(k) account was twenty four thousand, eight hundred nineteen thousand ($24,819) dollars. On June 27, 1991, within days of the parties' separation, the balance of this account was twenty nine thousand, one hundred sixty ($29,160) dollars. Thus, during the marriage, while the parties resided together, the plaintiff's 401(k) balance increased by approximately four thousand, four hundred ($4400) dollars. The balance, as of the most recent statement on September 30, 1997, was forty-nine thousand, six hundred seventy-four ($49,674) dollars. This substantial increase occurred, however, during the period of time in which the parties have been living separate and apart. Other than his interest in this retirement plan, and a 1988 Chevrolet automobile, the plaintiff has no assets.
The plaintiff is not healthy. He had a stroke in 1990. Also, he has a heart condition for which he has been hospitalized and for which he takes a daily regimen of prescriptive medications. Additionally, he sustained a head injury in 1991 from which he has residual cognitive difficulties. He takes dilantin, which is a prescriptive medication usually taken as a prophylaxis for seizures.
The plaintiff testified that when he returned to the parties' Enfield home following surgery in early summer 1991, he found that the defendant had befriended individuals who were active in an organization known as Constitutional Revival, and that she and these individuals occupied the home together in the daytime, relegating him to a rear bedroom, where he had to fend for himself. The plaintiff claimed that the house was in disarray, that the defendant was preoccupied with her new-found colleagues and their court-related activities, and that she was unwilling or unavailable to assist him in his convalescence. As a consequence, the plaintiff claimed, he left the defendant and their home. Aside from a brief period of approximately twelve weeks during which the plaintiff paid the defendant the sum of one hundred ($100) dollars a week, neither party has provided any support to the other since their 1991 separation. CT Page 2322
Since June 1996, the defendant has been employed as a clerk for New England Bakery Distributors, Inc., a business located in East Windsor. Recently she increased her work week from two to four days, or approximately thirty one and one-half hours a week. She earns six ($6) dollars an hour, grossing approximately one hundred eighty nine ($189) dollars a week. Since the defendant does not believe that she is constitutionally required to pay income taxes, she does not have any funds withheld from her gross. Therefore, her gross earnings equal her net disposable income. In addition to the employment earnings, the defendant received an inheritance of approximately five thousand ($5000) dollars following the parties' separation, and, in 1990, she had gambling winnings of approximately two thousand, six hundred, sixty ($2660) dollars. Aside from a 1984 automobile, the defendant has no assets. Her affidavit reflects debts of approximately six thousand, four hundred ($6400) dollars. It is not evident to the court that any of this debt was incurred while the parties still resided together.
While the defendant claimed that the plaintiff discontinued her from his employment-related health insurance, and there does appear to be a hiatus during which the defendant was mistakenly discontinued, the court is satisfied from documentary evidence adduced at the hearing that she is presently covered under the plaintiff's plan. The court orders the plaintiff to continue the defendant, as an insured, on his employment-related health insurance, at his expense, for so long as she is legally entitled to such coverage. In order to effectuate this provision, the plaintiff shall notify his employer immediately of the change in his marital status, and this order, together with the defendant's present address, so that the employer may send proper notification to the defendant of her COBRA rights and responsibilities.
The defendant disputed the plaintiff's version of the events of 1991. She claimed, in fact, that the plaintiff's hospitalization was in 1990, and she insisted that she maintained a neat and orderly home. With respect to the plaintiff's claims that she was involved in an organization dedicated to the disruption of court proceedings, the defendant presented documentary evidence to demonstrate that the plaintiff was also engaged in these activities. In support of this assertion, the defendant presented documents entitled "Citizen's Grand Jury Indictment" and "Citizen's Grand Jury Committee's Deed" which bear the signatures of both the plaintiff and the defendant, and CT Page 2323 which appear to challenge the jurisdiction of the Connecticut Superior Court to act in an unrelated matter. Defendant's Exhibits E, F. Whether or not the plaintiff or the defendant were involved in activities intended to disrupt court proceedings is not probative of issues relevant to this marital dissolution action.
The defendant also disputes the plaintiff's claim that they have been totally separated since the summer of 1991. Contrary to the plaintiff's statement that he is impotent because of his infirmities, the defendant claims that they have periodically engaged in sexual activities since their physical separation in 1991. Having had the opportunity to observe both parties and to assess their credibility as witnesses, the court credits the plaintiff's testimony in this regard and finds that the parties have been completely separated from one another since 1991. The court finds additionally that the marriage has broken down irretrievably with no hope of reconciliation. The court ascribes fault to neither party for the failure of the marriage. Accordingly, judgment may enter dissolving the marriage on the basis of its irretrievable breakdown.
A fair reading of the defendant's counterclaim and prayer for relief suggests that the defendant seeks alimony as compensation for felt grievances. The purpose of alimony is not to punish wrongdoing or to reward virtue, but rather to provide for continuing support to one who is entitled. The factors to be considered by the court in making an alimony determination are set forth in C.G.S. 46b-82 and in relevant decisional law. In assessing the defendant's alimony claim, the court has considered these statutory and decisional criteria. In this regard, the court notes particularly that this is a brief marriage, and that the plaintiff is in poor health. The court notes, as well, that while the plaintiff's earnings are greater than the defendant's, some of the earnings discrepancy is caused by the defendant's voluntary part time work schedule. The plaintiff is ordered to pay the defendant alimony in the amount of seventy-five ($75) dollars a week for a period of one year, the outside term of which shall not be subject to modification by extension.
With respect to property, the court orders the plaintiff to assign to the defendant, by way of Qualified Domestic Relations Order, the sum of two thousand, five hundred ($2,500) dollars from his 401(k) plan. This shall be accomplished by the plaintiff within thirty days of this Memorandum. In fixing this CT Page 2324 order, the court has taken into consideration the statutory factors enumerated in C.G.S. 46b-81, with particular regard to the brevity of the marriage, the amount of increase in the 401 (k) account during the marriage, and the relative opportunity for each of the parties to acquire assets in the future. No counsel fees are awarded to either party. Counsel for the plaintiff shall prepare the judgment. Judgment may enter accordingly.
Bishop, J.